# THE ARUNDEL REALTY COMPANY *vs.* THE MARYLAND ELECTRIC RAILWAYS COMPANY.

*Contracts; too indefinite; special railroad rates.*

An electric railroad sold to J. and G. a farm, with the promise to give them a special rate between Baltimore City and the farm, called afterward Woodlawn Heights, for the benefit of all purchasers of lots at said Woodlawn Heights. In a suit against the railroad by the assignees of J. and G. for damages for the breach of said promise it was *held,* that there was no stipulated time for which the special rate was to be maintained, nor was the amount of the special rate specified, and the agreement was too general and indefinite in its character to form the basis of a suit.                          p. 264

The rate for transportation of passengers is subject to frequent changes, and a reasonable time for which such rates, when established, should be maintained under a contract of this character (when no time is specified) would naturally be shorter than in the case of a contract for the maintenance of a railroad station.                          p. 263

To arrive at the real purpose and meaning of a contract courts consider the language employed and the subject-matter and circumstances under which it was made.          p. 261

*Decided June 23rd 1911.*

Appeal from the Circuit Court of Anne Arundel County.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER and STOCKBRIDGE, JJ.

*James M. Munroe* (with whom was *Robert Moss* on the brief), for the appellant.

*Charles A. Marshall* and *Robertson Griswold* (with whom was *Daniel R. Randall* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment of the Circuit Court for Anne Arundel county sustaining the demurrer to the amended declaration filed by the appellant and entering thereon a judgment for costs in favor of the appellee.

The declaration alleges that on the 7th day of June, 1908, the defendant company sold unto John W. Jarden and Clarence W. Gould a tract of land known as the Yealdhall farm, in Anne Arundel county, at and for the sum of twelve thousand dollars, which has been paid. That in the sale thereof, the defendant represented that "by reason of its proximity to the City of Baltimore and of its situation on the line of its railroad, it would make a most desirable property for suburban homes, and among the inducements offered by the defendant to the plaintiff to purchase and develop the same for such purpose "was a promise of the defendant to give to said Jarden and Gould a special rate between Baltimore City and the said farm, now called "Woodlawn Heights," for the benefit of all purchasers of lots at "Woodlawn Heights.'" That after the purchase of said land the plaintiffs, at the suggestion and by the inducement of the defendant, expended large sums of money in laying off said property in avenues and streets, blocks and lots, and in surveying, plotting and advertising said property, etc. That the defendant printed upon its official time table a notice of the special rate offered, to wit: "Woodlawn Heights, between Shipley

and Wellham, 15 minutes from Baltimore by the electric short line. Eleven cents round trip by commutation."

The declaration further alleges that Jarden and Gould in order the more effectually to conduct said business and develop and sell said property, associated with them John T. Moylan and Bruner R. Anderson and caused themselves to be incorporated under the name and style of the Arundel Realty Company, to which corporation the said Jarden and Gould transferred and assigned "all their rights and interests, as well as all their duties and obligations under their aforesaid agreement and contract with the defendant in reference to the development of said Woodlawn Heights property and the sale of lots there situate, and all their rights to the special rate between Baltimore City and Woodlawn Heights as agreed between the defendant and the said Jarden and Gould as hereinbefore set out," which transfer and assignment so made was with the approval and consent of the defendant company; and that thereafter the company continued "for a long space of time to advertise on its time tables the said special rate from Baltimore City to Woodlawn Heights and to circulate the same to the public from the ticket offices."

That under the inducement aforesaid, a large number of said lots had been sold, upon the instalment plan, by Jarden and Gould and the appellant company, at prices aggregating thirty-five thousand dollars, which were yielding to the appellant company a large profit, and it was in receipt of a large income from the regular payment of the instalments due and payable from time to time by the purchasers of said lots. That certain purchasers of lots had erected dwellings on them, whereby the unsold property had enhanced in value. Other purchasers of lots were about to erect dwellings on their lots, and other persons were negotiating for the purchase of other lots at a large profit to the plaintiff, and that the business of the plaintiff was successful and prosperous and yielded to it a large revenue and income.

That "without the knowledge or consent of the plaintiff and without previous notice to it, the defendant on the 7th of May, 1909, cancelled the said special rate between Baltimore and Woodlawn Heights, and refused to sell any commutation tickets between said points as previously agreed by the defendant, as hereinbefore set out, and refused to sell any round trip tickets between said points, and raised the rate of fare from eleven cents by commutation to twenty-five cents." That although repeatedly called upon to restore said rate, the defendant company has refused to do so, and that by reason of the acts of the defendant above stated and complained of, the business of the plaintiff at Woodlawn Heights has been greatly injured and practically ruined; that sales of lots have ceased; that the erection of buildings at Woodlawn Heights has ceased, and the property of the plaintiff has been greatly depreciated in value and rendered unsalable.

The declaration discloses that the property so purchased by Jarden and Gould was granted and conveyed, at the request of the purchasers, by the defendant company to the Arundel Realty Company, no deed ever having been executed to the purchasers, but it is not alleged in the declaration that the said conveyance contained any covenant or promise that the special rate mentioned in the declaration should be given to the grantee. The promise sued on in this case is a mere general verbal promise to give a special rate, without the same being fixed or established, and with no time therein stated for which such rate should be maintained, and it is for a breach of this alleged promise that the plaintiff is seeking to recover. The breach complained of consists in the cancellation of the special rate, "Eleven cents round trip by commutation," fixed and established after the contract of purchase, and the establishing of a rate of twenty-five cents one way, as we understand it, and the defendant's refusal to restore the former rate.

We have been referred to no case, nor have we been able to find one, where the contract was for a special rate given

by the railroad company as in this case, but there are a number of decisions, not only of this Court but in other jurisdictions, where the validity of contracts made for the location of public stations along the line of the road has been passed upon.

In some jurisdictions such contracts have been held to be absolutely illegal. *Burney* v. *Ludeling,* 47 La. Ann. 73; *Fla. Cent.* v. *State,* 31 Fla. 482 (20 L. R. A., 419); *Greenwood on Public Policy,* sec. 149, pages 316-321; while in others the contract is held to have been performed after a reasonable time, when changed conditions warrant a removal or relocation.

In the case of the *Md. and Pa. R. Co.* v. *Silver,* 110 Md. 517, this Court said: "It has been held in a number of well reasoned cases that the covenant on the part of the railroad company to erect and maintain a station at a certain place along its line, even if originally valid, is fairly complied with by the erection and maintenance of such a station for a period of years, and until the exigencies of the business, the convenience of the public, and the welfare of the railroad demands its removal. *Whalen* v. *Baltimore and Ohio Railroad Company,* 112 Md. 197."

In the case of *Whalen v. Baltimore & Ohio Railroad Co., supra,* this Court said: "Considering the language used in the covenant before us, it is to be observed, that while it distinctly provides for the construction and maintenance of the turnout and siding on Mr. Dorsey's land and the stopping of the cars at that point, it is entirely silent as to the duration of the maintenance of these structures or that service. Its meaning in that respect depends upon the context in which it appears and the subject-matter to which it relates. In order to arrive at the real purpose and meaning of parties to a contract the Court, according to the accepted canons of construction, considers the language employed, the subject-matter and the circumstances under which it was made."

This action, unlike the cases of the *Md. and Pa. R. Co.* v. *Silver,* and *Whalen* v. *Baltimore & Ohio R. R. Co.,* is not brought upon a covenant contained in a deed, but it is brought upon an alleged verbal "promise by the defendant to give to the said Jarden and Gould a *special rate* between Baltimore City and the said farm now called Woodlawn Heights, for the benefit of all purchasers of lots at said Woodlawn Heights."

If it is to be understood from this promise that the special rate referred to has reference to the charge that was to be made for the transportation of passengers upon the defendant's road between Baltimore City and Woodlawn Heights, although this is not clearly stated, such rate was not fixed and established in and by said promise or agreement, nor does it allege that the said special rate was thereafter to be established by agreement between the purchasers and the defendant company; and the length of time for which it was to be maintained was not therein stated. The defendant, after the sale of the lands, printed upon its time tables the rate or charge for transporting passengers over its road between the lands so sold and Baltimore City to be eleven cents round trip by commutation. But there is no statement therein that said rate or charge was fixed or established in accordance with or pursuant to any agreement made by and between the purchasers and the defendant, and so far as the declaration discloses, such rate may have been established without conference with the purchasers, Jarden and Gould.

It is not contended in this case by the appellant that the special rate was to last for all time, but only for a reasonable time thereafter, and the time it was maintained was not a reasonable time. Thus the injuries complained of exist in the deprivation to the appellant of such special rate between the date of its cancellation and the date when it would have been discontinued had it been maintained for what is regarded by the appellant company a reasonable time.

As was said in the case of *Whalen* v. *The Baltimore &*
*Ohio R. R. Co., supra,* "In order to arrive at the real pur-
pose and meaning of a contract the Court, according to the
accepted canons of construction, considers the language
employed and the subject-matter and the circumstances under
which it was made." We will thus apply this rule to this
case.

The subject-matter here is the procurement of a special
rate over the defendant's road between Baltimore and the
property of the appellant company. The alleged contract
made in relation thereto is said by the appellant company to
have been made in June, 1908, at the time of the purchase
of this land by Jarden and Gould, and continued in opera-
tion until May, 1909, in which time, the declaration alleges,
the plaintiff had sold a large number of lots, to wit: about
four hundred, at prices aggregating thirty-five thousand dol-
lars, and that the business of the plaintiff of developing and
selling lots at Woodlawn Heights was successful and pros-
perous and yielded a large revenue and income to the plain-
tiff.

The rate or charge for transportation of passengers is sub-
ject to frequent changes and has not that permanency of
character that is found in the location of a railroad station,
and a reasonable time for which rates, when established,
should be maintained under a contract of this character,
would naturally be of a shorter duration than that under a
contract for the maintenance of a railroad station where no
time was mentioned in either. It can not be claimed that a
reasonable time would necessarily have extended to a time
when the plaintiff had sold all the lots, for to have done this
it might have required years. Had they desired that the
rate should have been maintained until all the lots had been
sold, they should not have contented themselves with a con-
tract so general and indefinite as the one in this case, but
by adequate and proper language should have provided for
the maintenance of such rate until all the property was sold.

*Texas and Pacific R. R. Co.* v. *Marshall,* 136 U. S. 393; *Whalen* v. *Baltimore & Ohio R. R. Co., supra.* Even then the deprivation of such special rate would have been felt by the owners of the individual lots, for whose benefit it is said this contract was made, and such deprivation would have been felt by them for all times.

This alleged contract is, indeed, a very general and indefinite one. The assignors of the appellant company accepted. it so general in its character as to provide only for a special rate. Such rate was not then fixed and established, and was not fixed and established until after the sale of the land was made, and then, so far as the declaration discloses, was made by the defendant company, possibly without conference with the plaintiff. Any special rate, not confined to the one named in the declaration, however slight may have been the difference between such special rate and the regular rate, would have been a literal compliance with the contract made, and in fact, it is not disclosed by the declaration that the rate now established is not a special rate, that is, less than the regular rate.

The defendant company has raised the questions: First, as to the sufficiency of the consideration for the promise as alleged in the declaration; and, secondly, that the rights acquired by the original purchasers, Jarden and Gould, from the defendant company, by reason of the alleged promise, were not assignable. We have not, nor will we, pass upon these questions, as it is not necessary in the determination of this case.

In view of the general and indefinite character of the promise or agreement sued on, and the absence therein of any stipulation as to the time that the special rate was to be maintained, and also in view of the time for which such special rate was maintained, we are of the opinion that there was no error in the action of the learned judge below in

sustaining the demurrer, and we will affirm the judgment appealed from.

> *Judgment affirmed, with costs to the appellee.*