SHANNON, Chief Judge.
The appellant, plaintiff in the lower court, after being ruled against by this court in -the case of Robb v. Atlantic Coast Line Railroad Company, Fla.App.1960, 117 So. 2d 5.34, wherein he sought a declaratory .decree ¡under Sec. 87.01 et seq., Fla.Stat.,. F.S..A., filed a suit in the United States District Court for the Southern District .of Florida, in Tampa. The suit was dismissed <®m jurisdictional grounds, and the present ¡suit was then instituted in th'« Circuit Court for Hillsborough County.
For the purpose of giving a concise history of the litigation involving the land' herein, in ¡addition to the history as is set forth in Robb v. Atlantic Coast Line Railroad Company, supra, the following facts .are taken from the summary judgment .granted below. The defendant’s predecessor in title obtained the land in question from Lakeland Improvement Company, .a Florida corporation, in February, 1885. The deed of conveyance did not contain a reverter clause, but did recite: “■* -* * for and in consideration ¡of the sum .of One Dollar and the permanent maintaining of a passenger and freight .depot within the limits of the right of way .conveyed.” There was a freight and passenger depot .on the premises at the time ■of the conveyance. The railroad company .and its predecessors in title continued to ¡maintain ¡the freight and passenger depot -.from February 2, 1885, until on or about '.September 1, 1960. Then, by an agreement with the City of Lakeland, Florida, the defendant, in January, 1959, agreed that the City of Lakeland should acquire new depot property for “a more suburban location adequate to serve all the community needs,” and convey the same to the Coast Line, as well as to pay the Coast Line the sum of $872,000.00 towards the erection of a new depot. By the same agreement the r.aitno.ad .agreed to convey the old depot property to ±h.e City of Lakeland.
The Lakeland Improvement Company was .dissolved by Governor’s Proclamation on September 17, 1936, and was never restored to active status; and at the time of dissolution the company had r.o title to the property conveyed in 1885. Some six years after dissolution the plaintiff herein was named to fill an alleged vacancy on the Board of Directors of the defunct company. Then, on October 3:lr 1960, pursuant to plaintiff’s application, one of the judges of the Circuit Court in and for Polk County, Florida, entered' an order purporting to appoint and confirm the plaintiff as- trustee and receiver of the defunct corporation. In the meantime the railroad delivered possession of the property to the City of Lakeland, on or about January 1, 1961.
While the summary decree makes' findings regarding the dissolved corporation, etc., for the purposes of this opinion we will limit ourselves to another portion of the chancellor’s decree, as follows:
“Should all other considerations; favor plaintiff’s action, it is apparent,, as a matter of law, that defendant has complied with the requirements-of the conveyance. The consideration required ‘permanent maintaining’ of a passenger and freight depot. Defendant maintained the depot for more than seventy-five years and until the growth and demands of the community required a different location. Permanent does not mean perpetual. (See Board of Commissioners of Oklahoma County v. Russell, et al, 10 Cir., 174 F.2d 778 and cases cited therein.)”
The appellant in the instant case has posed two questions for us to answer. In view of the fact that our answer to> the second question terminates the litigation and is. the basis for our opinion, his first question will not concern us. The second question the appellant has raised is: Can a railroad company receive land' in consideration) of the sum of one dollar and the permanent maintaining of a passenger and freight depot thereon and subsequently terminate such use, sell the land *873 and convert the proceeds to its own benefit, without incurring liability for breach of the covenant to permanently maintain the depot? For the purpose of discussing this question it will be necessary to refer to the case of Robb v. Atlantic Coast Line Railroad Company, supra. In that case the court said, in part, as follows:
“The second point presented relates to the construction of Exhibit B by the lower court. This instrument is likewise a general warranty deed except for the consideration which is ‘one dollar and the permanent maintaining of a passenger and freight depot.’ There is no provision in the deed for the termination of the estate or title of the grantee, nor is there any provision for a reverter. * * *
“ * * * The lower court in its order granting the summary decree determined that there was no provision giving the plaintiff or its successors any cause of action against any persons presently claiming title as successors in title to the grantee. To conclude, upon careful consideration of the allegations of the complaint, the relief sought thereunder, together with the record before the court on summary proceeding, we are convinced that the decree entered as applied to the record and the relief sought is free of error.”
On petition for rehearing, which was denied, this court said:
“ * * * It was not intended that the affirmance be construed as res judicata upon any claim for damages under plaintiff’s exhibit B, should such occasion arise, or whether there is a right to a claim for damages. As indicated, there is no basis in the record for determination of that question.”
The chancellor in the summary decree below cited the case of Board of Commissioners of Oklahoma County v. Russell, 174 F.2d 778 (10th Cir., 1949). In that case the complaining parties executed a warranty deed to the Board of County Commissioners of the County of Oklahoma for certain real estate, but made the conveyance subject to the condition “[t]hat if the said grantee shall fail and neglect to have erected on said ground herein conveyed a court house and jail to be used for court and jail purposes for said county on or before the first day of January, 1910, and shall fail to plant good healthy shade trees * * * then and in that event this grant shall be null and void and said land shall revert to the grantors herein upon the grantors’ paying to the said grantee herein the sum of Four Thousand Dollars * * In that case a court house and jail were erected by January, 1910, and trees were planted and maintained until 1938, when the use of the building was discontinued as a court house and jail. Then, in 1946, the grantors brought this action for the possession of the property and the ejectment of the county therefrom. In the lower court the grantors’ complaint was sustained, but in the United States Court of Appeals the lower court was reversed, the court saying:
“ * * * it must be noted that the
provision does not require the County to permanently erect or to permanently maintain after erection a court house and jail or continuously thereafter use either of them. All it requires is that the County erect ‘a court house and jail to be used for court and jail purposes.’ The provision is entirely silent as to how long the County must maintain these buildings for such purposes.”
In so deciding, the court cited, among other cases, Mead v. Ballard, 1869, 7 Wall. 290, 74 U.S. 290, 19 L.Ed. 190, in this language:
“ * * * [A] deed conveyed land upon the ‘express understanding and condition’ that a certain educational institution should be ‘permanently located upon said lands and on failure *874 of such location being made on or before the 7th day of September, 1848, and on repayment of the purchase money without interest, the said land shall revert to and become the property of said grantors.’ ”
Within eight years the buildings were destroyed by fire and were not rebuilt, and the grantor sought a forfeiture on the ground that the condition subsequent required the permanent maintenance of the institution on the premises. The Supreme Court construed “the word ‘permanent’ not to be permanent in the sense that it was ever thereafter to be maintained, but permanent in the sense that the buildings were erected and the institution was located with the thought in mind that it should be a permanent location.” In addition to Mead v. Ballard, supra, the Russell case also cites Texas & Pacific Railway Company v. City of Marshall, 1890, 136 U.S. 393, 10 S.Ct. 846, 34 L.Ed. 385, wherein the City of Marshall conveyed to the railroad 66 acres of land for shops and depots, in consideration of which the Railroad Company agreed to “permanently establish its eastern terminus and Texas office at the City of Marshall.” The facilities were established and maintained for a number of years by the railroad, and thereafter removed, which led the City to institute an action to forfeit on the ground that the condition had been broken. The Supreme Court held that the agreement to maintain them “permanently” did not mean that the Railroad Company was to keep such facilities there “perpetually.” The Court necessarily construed the word “permanent” and said: “The word ‘permanent’ does not mean ‘forever,’ or lasting forever, or existing forever.” In addition to the two cases mentioned, there is also cited: Romero v. Department of Public Works, Cal.App. 1939, 97 P.2d 871; Whalen v. Baltimore & O. R. Co., 1910, 112 Md. 187, 76 A. 166; and Dukes v. Cole, 1891, 129 Ind. 137, 28 N.E. 441. The appellant has cited, among other cases: Seaboard Air Line Ry. Co. v. Dorsey, 1932, 111 Fla. 22, 149 So. 759; Armstrong v. Seaboard Air Line Ry. Co., 1922, 85 Fla. 126, 95 So. 506; Southern Colonization Co. v. Derfler, 1917, 73 Fla. 924, 75 So. 790, L.R.A. 1917 F. 744; Atlanta & St. A. B. Ry. Co. v. Thomas, 1910, 60 Fla. 412, 53 So. 510; and Taylor v. Florida East Coast Ry. Co., 1907, 54 Fla. 635, 45 So. 574, 16 L.R.A., N.S., 307. After consideration of these and other cases, however, we can find no grounds for holding that the chancellor below committed error in granting this summary decree.
Affirmed.
KANNER and SMITH, TJ., concur.